### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JOSEPH BOND, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FOLSOM INSURANCE AGENCY LLC, CODY FOLSOM, and BERKSHIRE HATHAWAY HOMESTATE COMPANIES<br><br>    Defendants._____/ | CIVIL ACTION FILE NO.<br>1:24-cv-00075-MJT<br><br>**FIRST AMENDED**<br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Bond (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

### **NATURE OF ACTION**

1.     As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by Folsom Insurance Agency LLC and its owner Cody Folsom, to market its services, which included truck insurance as agents for defendant Berkshire Hathaway Homestate Companies through the use of pre-recorded telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

3. The recipients of Folsom's illegal calls, which include Plaintiff and the proposed Class, are entitled to damages under the TCPA and because the technology used by Folsom makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

4. Plaintiff Joseph Bond, and at all times mentioned herein was, an individual citizen of Georgia in this District.

5. Defendant Folsom Insurance Agency LLC., is a Texas corporation with a registered agent of United States Corporation Agents, 10601 Clarence Dr. Suite 250 Frisco, TX 75033.

6. Defendant Cody Folsom is a resident of Texas.

7. Defendant Berkshire Hathaway Homestate Companies is an Omaha, Nebraska based insurance company for which Folsom Insurance and Cody Folsom are exclusive active agents.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9.     This Court has general personal jurisdiction over Folsom and Cody Folsom because they are located in this District.

10.    This Court has specific personal jurisdiction over Berkshire because they sell insurance in this District, including through the Folsoms, who utilize Berkshire as their exclusive agents.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were placed from this District.

## TCPA BACKGROUND

The TCPA Prohibits Automated Telemarketing Calls

12.    The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

14.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## FACTUAL ALLEGATIONS

17. Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

18. Plaintiff is a "person" as the term is defined by 47 U.S.C. § 153(39).

19. Plaintiff Bond's telephone number, (252) XXX-XXXX, is registered to a cellular telephone service and has been for years prior to receipt of the calls at issue.

20. Defendant placed at least one prerecorded telemarketing call to Plaintiff's number from Caller ID 903-502-4216 on January 8, 2024.

21. The call was voiced by a southern accented bloke and stated:

Hi this is Folsom Insurance. Your authority is not yet active. You [sic] still pending insurance right now. We offer down payment assistance and low down payments for insurance. Give us a call back at 903-502-4216 to get started today. That's 903-502-4216. Thank you.

22. Upon information and belief, the call was voiced by Defendant Cody Folsom.

23. The Folsom Defendants sell trucking insurance exclusively through Defendant Berkshire. To this end, Folsom's appointments with the Texas Department of Insurance indicate their Texas appointments as Berkshire Hathaway Homestate Insurance Company and Redwood Fire and Casualty Insurance Company, both of which are subsidiaries of Defendant Berkshire.

24. The "authority" referred to in the message is trucking authority insurance, which is a legal requirement for a trucker to obtain prior to beginning operations.

25. Defendant Berkshire offers trucking authority insurance that it sells through agents like the Folsom Defendants.

26. The call was prerecorded because an identical message is also present in YouMail's scam directory for the same number that called the Plaintiff. 903-502-4216, YOUMAIL, https://directory.youmail.com/phone/903-502-4216 [https://archive.md/vmMX2].

27. The recording is the third recording at the aforementioned link and includes the exact same script, complete with the improper use of "you" and the use of "zero" to designate the numeral 0, as opposed to "oh" in other identical places.

28. Defendant Cody Folsom may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to

5

be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

29. Mr. Folsom personally directed the TCPA-violative conduct at issue because he personally recorded the prerecorded message which violated the TCPA and communicated with Plaintiff's counsel regarding TCPA compliance and the allegations in the complaint.

30. Mr. Folsom was also the individual responsible for drafting, setting, implementing, and controlling Folsom Insurance's marketing strategy, including the use of illegal automated prerecorded calls and the scripting for such calls, as well as paying for them.

31. The foregoing facts demonstrate that Mr. Folsom had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

32. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

33. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

34. The FCC has instructed that sellers such as Berkshire may not avoid liability by outsourcing telemarketing to third party agents, such as Folsom:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment,

limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

35. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

36. Berkshire is liable for telemarketing calls placed by Folsom as its licensed and appointed agent to generate customers for Berkshire and its affiliated companies.

37. As an insurance company, Berkshire sells its insurance through agents like the Folsom defendants.

38. Berkshire controlled the day-to-day activities of Folsom by dictating underwriting criteria and authorizing and not authorizing certain types of advertising and marketing conduct.

39. As such, Berkshire controlled the content of Folsom's telemarketing.

40. It also could and should have communicated to Folsom that it was not to use prerecorded messages to advertise Berkshire insurance.

41. Berkshire also could have terminated Folsom.

42. It did not.

43. A reasonable seller whose agents are making calls would investigate into the reasons why publicly available information reveals they are be calling numbers with highly-illegal prerecorded messages.

44. Berkshire appointed Folsom as its exclusive agent without a proper investigation and did not terminate them.

45. As such, they knowingly ratified Folsom's conduct.

46. Berkshire also ratified Folsom's conduct because, with knowledge of Folsom's use of prerecorded calls, it nevertheless sold policies generated by Folsom.

47. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

48. The Plaintiff was not interested in the services or the call.

49. The call was an unwanted, nonconsensual encounter.

50. The Plaintiff never provided his consent or requested the call.

51. Plaintiff did not provide his prior express written consent to receive the telemarketing calls at issue.

52. The calls were not necessitated by an emergency.

53. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed,

and, in some instances, may have been charged for incoming calls. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action on behalf of himself and the following Class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

55. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff (5) from four years prior to the filing of the Complaint through trial.

56. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the class as he has no interests that conflict with any of the class members.

57. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

58. Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

59. This Class Action Complaint seeks injunctive relief and money damages.

60. The Class are defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

61. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes members number, at minimum, in the hundreds in each class.

62. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

63. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

64. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

65. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) Whether the Defendants used a pre-recorded message to send telemarketing calls;

    (b) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (c) whether Berkshire is vicariously liable for the actions of the Folsom Defendants;

    (d) whether Defendants' conduct constitutes a violation of the TCPA; and

    (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

66. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class.

67. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

68. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(b) on behalf of the Robocall Class

69. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

70. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

71. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and

every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

73. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated:  May 9, 2024                                        Respectfully Submitted,

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510